**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 11, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1822-CR**

Cir. Ct. No. 2020CF2093

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

WILLIAM M. ACOSTA,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: REBECCA A. KIEFER, Judge. *Order reversed and cause remanded for further proceedings*.

Before Donald, C.J., Colón, P.J., and Petrashek, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. William M. Acosta appeals a judgment of conviction for first-degree reckless injury and aggravated battery, as well as an order denying his postconviction motion without an evidentiary hearing. Both charges were modified by several penalty enhancers, including for the use of a dangerous weapon. *See* WIS. STAT. § 939.63(1)(b) (2023-24).[1] As a result, the jury was asked to determine whether Acosta possessed, threatened, or used a dangerous weapon during the commission of either offense.

¶2      During its deliberations, the jury asked whether fists are considered a weapon. By agreement of the parties, the circuit court responded by providing the generic definition of "dangerous weapon," which the jury had already received— as relevant here, "any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." *See* WIS. STAT. § 939.22(10).

¶3      The jury was not told that the longstanding interpretation of WIS. STAT. § 939.22(10) is that it "does not encompass portions of the defendant's anatomy as dangerous weapons." ***State v. Frey***, 178 Wis. 2d 729, 745, 505 N.W.2d 786 (Ct. App. 1993). Acosta's trial counsel did not suggest a response consistent with ***Frey***, nor did counsel object to providing the generic definition. We conclude that under the circumstances here, Acosta sufficiently alleged ineffective assistance of trial counsel to warrant a ***Machner*** hearing.[2] We

---

[1] Although Acosta was charged while the 2019-20 version of the Wisconsin Statutes was in effect, the relevant statutory language has not changed, and thus all references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] *See* ***State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (generally requiring an evidentiary hearing preserving counsel's testimony about his or her handling of the case as a predicate to relief for ineffective assistance of counsel).

2

therefore reverse the order denying his postconviction motion without a hearing and remand for further proceedings, including a *Machner* hearing and a determination on the merits of his ineffective assistance of counsel claim.

## BACKGROUND

¶4 Acosta was convicted by a jury of viciously attacking his girlfriend, Camila.[3] She testified at trial that on May 26, 2020, she was in the process of breaking up with Acosta and was collecting her last box of possessions from his house. Camila acknowledged that the two had argued about text messages and that Acosta had punched her in the face with his fists during the argument. Camila also acknowledged that she went to the hospital two days later and received treatment for broken ribs, a ruptured spleen, and a collapsed lung.

¶5 Camila was a reluctant witness against Acosta.[4] She stated that she did not know who caused the injuries to her body, but she denied it was Acosta. Camila said the injuries occurred after she left Acosta's home for a brief period of time and was attacked while running through alleyways. She acknowledged at trial that she had told hospital staff and police officers that Acosta had caused all of her injuries. Camila specifically recalled telling police officers that Acosta grabbed a wooden stick and began to strike her during the assault. However, Camila testified she was lying when she made those statements.

---

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86, we use a pseudonym for the victim.

[4] In multiple jail telephone calls, Acosta had attempted to dissuade Camila from testifying, both directly and by urging other individuals to contact her.

¶6    Following Camila's testimony, the prosecutor notified the circuit court that the State would be seeking a lesser-included instruction for second-degree reckless injury. The prosecutor noted the first-degree charge required the State to prove that the "circumstances of the defendant's conduct showed utter disregard for human life." The prosecutor stated that Acosta's alleged use of a stick was central to that charge, and that there was scant evidence to support a conclusion that he had done so based on Camila's testimony:

> I think the basis for that [first-degree] charge has a lot to do with the use of a dangerous weapon and the stick. I don't think there was a lot of testimony in regards to the defendant using a stick, or a two-by-four, or whatever it is as charged in the information. So I think that the conduct, even with hitting the face, could still be classified as Reckless Injury. I think though without that use of the stick, that defeats the … [utter] disregard for human life [element].

The parties and the circuit court ultimately agreed it was premature at that point to rule on the propriety of a lesser-included instruction.

¶7    Other witnesses testified that Camila gave inconsistent stories about how her injuries happened, some of which included Acosta using an object to assault her. An officer testified that after Camila initially said she had been "jumped," Camila stated that Acosta had caused her injuries, including by striking her with a wooden loofah. The emergency room physician who treated Camila testified that Camila told her she was "beat up by her partner with fists and a two-by-four." Camila told the triage nurse that she had been kicked and punched numerous times and hit with a two-by-four in the back of the head when she was jumped. And she told her primary nurse that her "significant other beat her with a large wooden stick and glass bottle."

4

¶8      The prosecutor renewed the request for a lesser-included reckless injury instruction at the close of evidence, and the circuit court agreed that it was appropriate.  The basis for the request was, again, that there was a "credibility concern" with the victim, insofar as she had told various people that an object had been used during the commission of the offense but had denied on the stand that Acosta used anything but his fists to harm her.[5]

¶9      During closing arguments, the prosecutor asserted the elements of first-degree reckless injury had been established, including by referencing the wooden object mentioned during the testimony.  When addressing the penalty enhancer, however, the prosecutor conceded "there wasn't a lot of testimony about the dangerous weapon."  Nonetheless, the prosecutor urged the jury to rely on the testimony regarding the wooden stick and find that Acosta had used a dangerous weapon in the commission of the offense.  Defense counsel in closing attacked Camila's credibility, emphasizing her denial during her testimony that Acosta had hit her with anything but his fists and her inconsistent descriptions of the object used to attack her.

¶10     After the jury began deliberating, the foreperson sent the circuit court a question: "Are fists considered a weapon?"  With the agreement of the

---

[5] Defense counsel, at this point, sought clarification as to whether the State would be seeking a penalty enhancer for the use of that dangerous weapon in relation to the lesser-included offense.  When the prosecutor responded affirmatively, defense counsel objected to the instruction, suggesting the State's logic was flawed.  Defense counsel questioned how the jury could find that a dangerous weapon had been used in the commission of the lesser-included offense if the basis for requesting the lesser-included instruction was that the jury could reasonably conclude Acosta did not use an object during the attack.  Neither the circuit court nor the prosecutor directly addressed defense counsel's objection, and the jury was ultimately instructed to determine whether a dangerous weapon had been used in the commission of either the first- or second-degree reckless injury offenses.

parties, the court responded by providing the definition of "dangerous weapon," which was an instruction the jury had already received: "I will give you the following language that may be found on pages 6 and 9 of the final jury instructions that have been submitted to you. 'Dangerous weapon' means any device or instrumentality which, in the manner it is used or intended to be used, is likely to produce death or great bodily harm." The jury found Acosta guilty of both first-degree reckless injury and aggravated battery, and it also determined that he had used a dangerous weapon during the commission of those offenses.

¶11    Citing *Frey*, Acosta filed a postconviction motion seeking a new trial on the basis that the answer to the jury's question should have been "no." Acosta alleged that his trial attorney had provided constitutionally ineffective assistance, arguing there could be "no reasonable strategy in letting the court refer the confused jury back to the ambiguous instruction, not when controlling, on-point case law—laid out in the pattern jury instruction itself—provided an unambiguous answer to the jury's question." Acosta also alleged the error was prejudicial, asserting that "[t]his failure to clarify a fundamental point of law invited the jury to proceed on a legally impossible theory, undermining confidence in Mr. Acosta's convictions for first-degree reckless injury and aggravated battery while using a dangerous weapon."

¶12    The circuit court denied the motion without a hearing. It concluded that Acosta's claim was "far too speculative" to establish prejudice. Specifically, the court reasoned that "the jury, after being directed back to the pattern instruction which clearly explains that a [dangerous] weapon must be a device or instrumentality, could have reasonably concluded that the defendant used a wooden stick to beat the victim, just as she had reported to both law enforcement and medical staff." This appeal followed.

**DISCUSSION**

¶13    We review whether a postconviction motion sufficiently alleges ineffective assistance of counsel using a mixed standard. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. First, we review de novo whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief. *Id.* If so, the circuit court must hold an evidentiary hearing. *Id.* However, if the motion fails to raise sufficient facts or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the court has the discretion to grant or deny a hearing. *Id.* We review the circuit court's discretionary decisions for an erroneous exercise of discretion. *Id.*

¶14    Acosta's postconviction motion seeks relief based on allegedly constitutionally ineffective assistance he received from his trial counsel. To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *State v. Savage*, 2020 WI 93, ¶25, 395 Wis. 2d 1, 951 N.W.2d 838; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶15    Accordingly, Acosta's motion had to adequately allege both deficient performance and prejudice for him to be entitled a hearing. Deficient performance requires a showing that the defense attorney's performance was objectively unreasonable under the circumstances—that is, that the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Savage*, 395 Wis. 2d 1, ¶28 (citation omitted). Prejudice is demonstrated by showing "a reasonable probability that, but for counsel's

professional errors, the result of the proceeding would have been different." *Id.*, ¶32 (citation omitted).

¶16 Although the circuit court appears to have decided the motion solely on prejudice grounds, we begin with deficient performance before turning to that prong. Acosta's motion alleged that his attorney was deficient for agreeing to reinstruct the jury with the statutory definition of "dangerous weapon" in response to its question about whether fists are weapons. Instead, Acosta argues his attorney should have requested an instruction consistent with *Frey*, which categorically held that bare hands are not dangerous weapons. *Id.*, 178 Wis. 2d at 745. The motion alleged that there could be no reasonable strategy for failing to bring to the circuit court's attention controlling case law that directly answered the jury's question.

¶17 We conclude that Acosta's motion sufficiently alleges deficient performance. "[A] prudent lawyer must be 'skilled and versed' in the criminal law." *State v. Felton*, 110 Wis. 2d 485, 502, 329 N.W.2d 161 (1983). The jury's question had been directly and definitively addressed by longstanding case law, and the motion alleges that Acosta's counsel should have been familiar with *Frey*. WISCONSIN JI—CRIMINAL 910, the pattern jury instruction for the definition of "dangerous weapon," supports that assertion, as it includes a footnote paragraph alerting that WIS. STAT. § 939.22(10) has been deemed ambiguous in similar circumstances and explaining *Frey*'s holding.

¶18 The State argues that because Acosta's trial counsel acquiesced in providing a correct jury instruction, there can be no deficient performance. *See State v. Langlois*, 2018 WI 73, ¶50, 382 Wis. 2d 414, 913 N.W.2d 812. Collectively, *Langlois* and its predecessors establish that if a circuit court's

8

reinstruction to a jury in response to a question correctly states the law, we will generally not discern a basis for a claim of ineffective assistance of counsel. *See id.*; *State v. Neumann*, 2013 WI 58, ¶¶134, 139, 348 Wis. 2d 455, 832 N.W.2d 560; *State v. Hubbard*, 2008 WI 92, ¶57, 313 Wis. 2d 1, 752 N.W.2d 839.

¶19 While the reinstruction referred the jury to the instructions already given, it did not directly address the jury's question, nor did it provide the jury with a complete and accurate statement of the law. Worse, reinstructing the jury with the general definition of "dangerous weapon" invited the jury to improperly conclude that fists could be weapons—a manifestation of the very ambiguity that *Frey* recognized. *See Frey*, 178 Wis. 2d at 738 ("The statute's meaning cannot be determined by examining the statutory language alone because reasonable persons could differ concerning whether bare hands are a 'device or instrumentality' within the meaning of [WIS. STAT. § 939.22(10)]."). Taking into account the jury's question and the context of the case, the postconviction motion sufficiently alleges that defense counsel's agreement to reinstruct the jury with the general definition of "dangerous weapon" was deficient.

¶20 Turning to the prejudice prong, the State endorses the circuit court's conclusion that Acosta's motion failed to sufficiently allege prejudice. The State's prejudice argument relies on its assertions about the correctness of the reinstruction pursuant to *Langlois*. As set forth above, the notion that the reinstruction was a correct statement of the law in a general sense does not establish the correctness of the reinstruction with respect to the jury's specific question about whether fists are weapons.

¶21 Alternatively, the State argues the evidence was such that there is "no reasonable probability that Acosta would have been acquitted of any of the

charges if the judge told the jury that hands are not a dangerous weapon." This argument rests on the State's assertion that the use of a "dangerous weapon" is merely a penalty enhancer and is not an element of either substantive offense. As Acosta notes, this argument falls flat; longstanding case law establishes that the "use of a dangerous weapon changes the nature of the underlying crime" and is therefore "not only a penalty enhancer[;] … [i]t is also an element of the crime charged." *State v. Villarreal*, 153 Wis. 2d 323, 328-29 & n.1, 450 N.W.2d 519 (Ct. App. 1989); *see also State v. Peete*, 185 Wis. 2d 4, 19-22, 517 N.W.2d 149 (1994) (adopting *Villarreal*'s analysis of the "dangerous weapon" penalty enhancer); *State v. Carrington*, 130 Wis. 2d 212, 222, 386 N.W.2d 512 (Ct. App. 1986), *rev'd on other grounds*, 134 Wis. 2d 260, 397 N.W.2d 484 (1986).

¶22 In sum, Acosta's postconviction motion sufficiently alleges a claim for ineffective assistance of counsel, necessitating a *Machner* hearing. The motion alleges Acosta's trial counsel was constitutionally deficient for failing to call attention to case law that was directly responsive to the jury's question. The motion also adequately alleges that there is a reasonable probability that a jury instructed in accordance with *Frey* would conclude that at least one element of the crimes charged—the use of a dangerous weapon—was lacking.[6]

---

[6] Additionally, it seems possible that the idea of fists as dangerous weapons colored the jury's view of the evidence as it relates to the circumstances necessary for conviction on the first-degree reckless injury charge—specifically, whether the defendant's actions demonstrated utter disregard for human life. Indeed, the evidence of the use of an object during the attack was so uncertain that the prosecutor requested a lesser-included reckless injury instruction, albeit still involving the use of a dangerous weapon. Having already concluded that Acosta's motion adequately demonstrated a reasonable probability of a different outcome on the "use of a dangerous weapon" element, we need not consider whether the jury's consideration of other elements was similarly affected by the absence of a *Frey* instruction. Rather, we leave that matter for the circuit court's assessment on remand, if necessary.

¶23 The State does not separately develop an argument that the record conclusively establishes that Acosta is not entitled to relief. *See State v. Spencer*, 2022 WI 56, ¶49, 403 Wis. 2d 86, 976 N.W.2d 383. The State's critique of Acosta's prejudice argument as being merely speculative nods in that direction though, insofar as the State engages in a wholistic review of the trial record. Essentially, the State concedes that, based on the jury's question, it was likely "that the jury believed Acosta caused all of [Camila's] injuries but was debating whether the State adequately proved he had an object." The State argues that the jury's subsequent request for pictures of Camila's injuries "cured" its uncertainty, because it is likely the jury concluded Acosta used an object based on the extent of her injuries.

¶24 We decline the State's invitation to divine the jury's intent in this way. The jury's request for pictures of Camila's injuries could just as well have been for the purpose of determining whether Acosta's assault—with fists or an object—displayed utter disregard for human life. The State offers nothing to suggest a nexus between the jury's request for clarification regarding whether fists are weapons and its later request for pictures of the victim's injuries. Under these circumstances, we conclude both that Acosta has adequately pled prejudice and that the record does not conclusively establish that Acosta is not entitled to relief. We reverse the order denying Acosta's postconviction motion and remand for further proceedings, including a *Machner* hearing and a determination on the merits of his ineffective assistance of counsel claim. *See State v. Jackson*, 2023 WI 3, ¶¶10-11, 405 Wis. 2d 458, 983 N.W.2d 608.

¶25 In a footnote, the State argues that even if Acosta is ultimately able to demonstrate that he received constitutionally ineffective assistance, his remedy is limited to resentencing without the dangerous weapon penalty enhancers, not a

new trial.[7]  Because our review in this appeal is limited to the sufficiency of the postconviction motion, and given the parties' limited briefing on the issue, we do not address the appropriate remedy at this time.  The circuit court may determine the appropriate remedy as a matter of law if it concludes that Acosta has proven his claim.  *See* ***State v. Lentowski***, 212 Wis. 2d 849, 853, 569 N.W.2d 758 (Ct. App. 1997).

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Although Acosta was subject to penalty enhancers for use of a dangerous weapon, habitual criminality, and domestic violence repeater, his sentence for each offense was within the maximum penalty for the base offense.  *See* WIS. STAT. §§ 940.23(1)(a), 939.50(3)(d), 973.01(2)(b)4. (2019-20) (collectively setting a maximum penalty of 25 years' imprisonment, with no more than 15 years' initial confinement, for first-degree reckless injury); WIS. STAT. §§ 940.19(5), 939.50(3)(e), 973.01(2)(b)5. (collectively setting 15 years' imprisonment, with no more than 10 years' initial confinement, for aggravated battery).  The State does not argue that the sentences in any way affect the analysis in this case.